US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

NOV 3 0 2015

DOUGLAS F. YOUNG, Clerk
By
    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

WENDALL N. SAMPSON, JR.,                    )
                          Plaintiff,        )
                                            )
v.                                          )  No. 15-2251
                                            )
CITY OF FORT SMITH, ARKANSAS,               )
a/k/a FORT SMITH POLICE                     )
DEPARTMENT;                                 )
RAY GOSACK, in his Official and             )
Individual Capacity;                        )
KEVIN LINDSEY, in his Official and          )
Individual Capacity;                        )
JARRARD COPELAND, in his Official and )      **COMPLAINT**
Individual Capacity;                        )
LEVI RISLEY, in his Official and Individual )
Capacity;                                   )
MARK HALLUM, in his Official and            )
Individual Capacity;                        )
DEAN PITTS, in his Official and Individual )
Capacity;                                   )  **JURY TRIAL**
ANTHONY BOWERS, in his Official and   )      **DEMANDED**
Individual Capacity;                        )
DOUG BROOKS, in his Official and            )
Individual Capacity;                        )
DANIEL GRUBBS, in his Official and          )
Individual Capacity;                        )
AUSTIN COLLINS, in his Official and         )
Individual Capacity;                        )
COLBY ROE, in his Official and Individual   )
Capacity;                                   )
WYNAN WADE, in his Official and             )
Individual Capacity,                        )
                          Defendants.       )

*Sampson – Complaint*
*Page 1 of 27*

## COMPLAINT

COMES NOW the Plaintiff, Wendall N. Sampson, Jr., by and through undersigned counsel, and for his Complaint, states:

### INTRODUCTORY STATEMENT

This is an action to redress employment discrimination, including discrimination and harassment based upon race (African-American) as well as retaliation, in violation of Title VII of the 1964 Civil Rights Act (as amended by the Civil Rights Act of 1991) as codified at 42 U.S.C. § 2000e, *et seq.*; to redress deprivations of certain rights, in violation of 42 U.S.C. §§ 1981 & 1983 and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq.*; and for a permanent injunction prohibiting the Defendants from engaging in the policies and practices alleged herein in violation of Title VII. Plaintiff Wendall N. Sampson, Jr., seeks full back pay as the result of the discriminatory failure to promote Plaintiff and his subsequent retaliatory demotion/transfer, promotion to Sergeant or front pay in the alternative, benefits, compensatory and punitive damages, liquidated damages, prejudgment and post-judgment interest, reasonable attorney's fees and expenses, and any and all other relief to which he is entitled as the victim of racial discrimination, harassment, and retaliation. As a direct result of the

racial discrimination, harassment, and discharge suffered by the Plaintiff, he has suffered damages, including the loss of significant employment compensation, for which he seeks the relief set forth, *infra*.

## JURISDICTION & VENUE

1. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3)-(4); 42 U.S.C. §§ 1981, 1983, and 2000e, *et seq*. Plaintiff also seeks a permanent injunction and a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, declaring that the Defendants individually and collectively discriminated and retaliated against him in the terms and conditions of his employment.

2. This Court has supplemental jurisdiction over Plaintiff's claims under the Arkansas Civil Rights Act pursuant to 28 U.S.C. § 1367.

3. Venue herein is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as the alleged unlawful employment practices were committed within the Western District of the State of Arkansas.

4. Plaintiff filed a timely Charge of Discrimination (#493-2015-00921) with the Equal Employment Opportunity Commission alleging racial discrimination and harassment on or about April 16, 2015, which was amended after a meeting with the EEOC investigator on May 28.

5.  The Equal Employment Opportunity Commission issued to Plaintiff a Right to Sue Letter on the racial harassment/discrimination and retaliation charges on August 27, 2015, which was received by Plaintiff on August 29, 2015.

6.  None of the Defendants is a citizen or resident of the State of California.

7.  This Court has jurisdiction over the 42 U.S.C. §§ 1981 & 1983 claims as all such causes of action arose within three (3) years of the date of filing of this Complaint.

## PARTIES

8.  Plaintiff Wendall N. Sampson, Jr., is and was at all times relevant to this Complaint a citizen of the United States, residing in Fort Smith, Arkansas, and employed by the City of Fort Smith, Arkansas, through the Fort Smith Police Department ("FSPD"). His race is African American, and, therefore, he is a protected person and/or a member of a protected class under 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Arkansas Civil Rights Act.

9.  Defendant City of Fort Smith, Arkansas ("the City"), is a municipal corporation, formed under the laws of the State of Arkansas, and it

owns, controls, operates, and maintains superintending control over the FSPD, such that Plaintiff, as an employee of the FSPD, is an employee of the City. The City is subject to the laws and requirements governing racial discrimination, harassment, and retaliation in the workplace.

10. Defendant Ray Gosack was, at times relevant to this Complaint, the Administrator of the City of Fort Smith, Arkansas. He is sued in his official and individual capacities.

11. Defendant Kevin Lindsey is, and was at all times relevant to this Complaint, the Chief of Police for the FSPD, tasked with, *inter alia*, overseeing the day-to-day operation of the FSPD and ensuring compliance with EEOC and Civil Rights-law requirements. He is sued in his official and individual capacities.

12. Defendant Jarrard Copeland is, and was at all times relevant to this Complaint, a Captain with the FSPD who was the supervisory officer for the FSPD Office of Professional Standards. He is sued in his official and individual capacities.

13. Defendant Levi Risley is, and was at all times relevant to this Complaint, a Captain with the FSPD. He is sued in his official and

individual capacities.

14. Defendant Mark Hallum is, and was at all times relevant to this Complaint, a Major with the FSPD, responsible for, *inter alia*, serving on disciplinary review boards pursuant to FSPD policy. He is sued in his official and individual capacities.

15. Defendant Dean Pitts is, and was at all times relevant to this Complaint, a Major with the FSPD, responsible for, *inter alia*, the oversight of the Communications department of the FSPD and serving on disciplinary review boards pursuant to FSPD policy. He is sued in his official and individual capacities.

16. Defendant Anthony Bowers is, and was at all times relevant to this Complaint, a Sergeant with the FSPD. He is sued in his official and individual capacities.

17. Defendant Doug Brooks is, and was at all times relevant to this Complaint, a Sergeant with the FSPD. He is sued in his official and individual capacities.

18. Defendant Daniel Grubbs is, and was at all times relevant to this Complaint, a Sergeant with the FSPD, employed as the Public Information Officer and responsible for, *inter alia*, responding to

Freedom of Information Act requests. He is sued in his official and individual capacities.

19. Defendant Austin Collins is, and was at all times relevant to this Complaint, an Officer with the FSPD. He is sued in his official and individual capacities.

20. Defendant Colby Roe is, and was at all times relevant to this Complaint, an attorney with Daily & Woods, PLLC, who functioned as one of the city attorneys for the City of Fort Smith, Arkansas. He is sued in his official and individual capacities.

21. Defendant Wyman Wade is, and was at all times relevant to this Complaint, an attorney with Daily & Woods, PLLC, who functioned as one of the city attorneys for the City of Fort Smith, Arkansas. He is sued in his official and individual capacities.

## BACKGROUND

22. Plaintiff was hired by the FSPD as a probationary officer on September 25, 1995. At the time of his hiring, Plaintiff was the tenth (10th) African-American officer hired in the history of the FSPD.

23. Over the course of Plaintiff's employment with the FSPD, he has served in Patrol (1995-2000), as a Detective (2000-2008), in

Community Relations (2008-2010), as Airport Liaison (2010-2011), and as Assistant Radio Room Supervisor (2011-2015).

24. From Plaintiff's initial hiring in 1995, and throughout his entire tenure as an FSPD employee, Plaintiff performed his duties commendably, meeting or exceeding the employer's legitimate expectations and receiving numerous commendations and awards.

25. In the over twenty years since Plaintiff was hired, the FSPD has not hired another African-American officer, despite multiple African-American candidates' applying and meeting the necessary qualifications for being hired.

26. No African-American officer has been promoted within the FSPD since Alvin Bradley in May 1988.

27. Throughout his employment with the FSPD, Plaintiff has been subjected to racial comments and racial "jokes" from both supervisors as well as other FSPD officers, all of which has occurred without any reprisal for those FSPD supervisors/officers.

28. Despite Plaintiff's handling the same responsibilities and duties as a Sergeant in his position as Assistant Radio Room Supervisor, despite FSPD policy specifically naming that position as one where the officer

who holds the position may be given an increased level of pay, and despite the fact that white officers who are in specialized positions such as this one routinely receive this higher rate of pay, Plaintiff was not given the increased pay at any time during his tenure in that position.

29. In April 2013, Plaintiff filed a formal grievance with Defendant Lindsey, regarding Defendant Sprayberry's demonstrable racial bias toward Plaintiff, African-American applicants to the FSPD, and African-Americans generally. This grievance was "Sustained" with "appropriate" discipline allegedly imposed by Defendant Lindsey; however, no record of the discipline was ever created, and Defendant Lindsey prevented the complaint from being placed in the FSPD records system and ordered the records of the complaint and discipline destroyed, in violation of FSPD policy, shortly thereafter.

30. Starting in July 2013, Defendants Lindsey, Sprayberry, Copeland, and Smithson, began retaliating against Plaintiff in response to Plaintiff's earlier complaint about Defendant Sprayberry.

31. Prior to July 2013, Plaintiff was the subject of one (1) sustained complaint over eighteen-plus years of service; since July 2013, Plaintiff

has been the target of at least eleven (11) internal investigations and/or administrative inquiries, all led by one or more named Defendants.

32. Defendants' pretexts for investigating Plaintiff have included everything from sexual harassment to waste of public funds, all of which have been baseless, save for two minor alleged infractions, one of which was punished by a suspension too minor to allow for an appeal and the other of which was reduced from a ten-day suspension to oral counseling on appeal.

33. On October 21, 2013, Plaintiff filed an EEOC complaint (Charge # 493-2013-00036), asserting racial discrimination at the FSPD both generally and in officer promotion.

34. Around this same time period, Plaintiff was offered a Pre-Determination Hearing ("PDH") as a result of one of the investigations into Plaintiff that began after July 16, 2013.

35. Plaintiff sought to have his PDH rescheduled by only one day so that he could have his attorney present for the PDH, which is allowed under FSPD policy.

36. Defendant Hallum refused to reschedule Plaintiff's PDH, despite the fact that there was another already scheduled PDH for another officer,

which had been declined and with which Hallum could have switched Plaintiff's PDH.

37. There was no requirement that Plaintiff's PDH be held on the specific day that was originally scheduled for it, and PDHs are routinely rescheduled for white officers upon request.

38. On November 3, 2013, Plaintiff learned that Defendant Collins had began commenting on Facebook about pending disciplinary action regarding Plaintiff. Defendant Collins' post was profane and threatening in nature, with pictures of him consuming alcohol and brandishing a knife, and Collins had changed his profile name to "Austin 'pullthetrigger' Collins." Plaintiff filed an official complaint on November 4, 2013, with the Office of Professional Standards. Defendant Copeland advised Plaintiff that Defendant Collins' speech on Facebook was protected free speech, that no action would be taken against Collins, and that the investigation was closed.

39. In December 2013, Defendants Copeland and Smithson, at the direction of Defendant Lindsey, supplied an FSPD civilian employee with a hidden recording device and directed her to try to obtain "evidence" of wrongdoing by Plaintiff.

40. On December 31, 2013, Defendant Collins filed a baseless internal complaint, alleging that Plaintiff had engaged in terroristic threatening of Collins. The investigation was closed as "Unfounded," but Defendant Collins was not disciplined for making this false allegation.

41. Beginning in January or February 2014, and continuing through at least September 2014, Defendant Copeland began taking screenshots of Plaintiff's Facebook page, despite there being no open investigation into Plaintiff at that time and despite none of the Facebook postings in question having been made while Plaintiff was on duty.

42. In February 2014, in response to Plaintiff's October 2014 EEOC complaint, Defendant City disingenuously told the EEOC investigator that they could not promote Plaintiff to Sergeant, as he was fourth on the list of candidates; in reality, Plaintiff was third on the list at that time, and—under the Rule of Three—it was well within the power of Defendant City and Defendant Lindsey to promote Plaintiff.

43. Notably, Defendant Lindsey has used the Rule of Three multiple times to promote white officers.

44. On July 8, 2014, Defendants Roe and Wade met with Defendants Copeland, Smithson, and Lindsey, with the latter Defendants

"seek[ing] their advice about [Plaintiff's] Facebook posts and whether or not they felt there were rules or policy violations" in those posts.

45. In this meeting, Defendant Copeland, who had previously told Plaintiff that Defendant Collins' Facebook activities were protected speech, "specifically asked [Defendant] Roe if he would do some research to find out if there were any recent rulings regarding employees and their personal Facebook accounts."

46. Defendants Roe and Wade billed Defendant City for their work done as part of the research into disciplining Plaintiff for his Facebook postings.

47. Defendant Roe subsequently contacted Defendant Copeland and told him that Roe had located several cases involving public employees. Defendant Copeland later suggested that it was upon reading these cases that Defendant Lindsey opened an investigation into Plaintiff regarding his Facebook posts.

48. On August 7, 2014, Defendant Lindsey instructed Plaintiff to leave a sworn-officers' meeting, ostensibly because Plaintiff was "a plaintiff in a lawsuit," though Lindsey later stated that there was no discussion about the lawsuit after Plaintiff was ejected from the meeting.

49. Plaintiff then filed a grievance with Defendant Gosack regarding Plaintiff's ejection from the August 7 meeting. Defendant Gosack responded by stating that Defendant Lindsey's actions in ejecting Plaintiff from the meeting were appropriate because "some employees" wanted to raise concerns about comments made online by undersigned counsel, which is contrary to what Lindsey told Plaintiff.

50. Also in August 2014, Defendants Grubbs, Copeland, and Roe discussed and researched whether Plaintiff could be disciplined for FOIA requests made by undersigned counsel. Defendants Copeland and Smithson subsequently questioned Plaintiff about undersigned counsel's knowledge, despite no evidence that Plaintiff had anything to do with the FOIA requests, and Copeland and Smithson then questioned Plaintiff about his Facebook postings, including postings about the law firm where Defendants Roe and Wade are partners.

51. Based on Defendants Copeland and Smithson's investigation, Plaintiff was given a pre-determination hearing ("PDH") regarding his Facebook posts, and Plaintiff's disciplinary review board consisted of, *inter alia*, Defendants Pitts, Bowers, and Brooks.

52. Following Plaintiff's PDH, Defendant Pitts recommended forty (40) hours suspension as discipline for Plaintiff's off-duty Facebook postings.

53. Defendant Bowers—who has a tattoo of a Confederate flag on his forearm and is close friends with Defendant Copeland—recommended that Plaintiff be terminated from the FSPD as discipline for his off-duty Facebook postings.

54. Defendant Brooks recommended that Plaintiff be given thirty (30) days suspension as discipline for Plaintiff's off-duty Facebook postings.

55. Defendant Lindsey imposed a suspension of eighty (80) hours without pay as discipline for Plaintiff's off-duty Facebook postings.

56. Plaintiff appealed this suspension, and the Fort Smith Civil Service Commission found that the FSPD policies regarding Facebook and social media were inadequate and that Plaintiff should not have been suspended. Plaintiff's suspension was reduced to "documented oral counseling" at the suggestion of the Civil Service Commission.

57. At the same time that Plaintiff was being investigated and disciplined for Facebook posts, all of the named Defendants had actual or

constructive knowledge of a Facebook page under the name "Bennie Taddler," which made disparaging comments about Plaintiff, stated that Plaintiff should be fired, and contained information that could only have come from the FSPD Office of Professional Standards. No investigation was opened into this Facebook page until November 2014.

58. The "investigation" into the Bennie Taddler page was then handled by Defendant Bowers, despite his having been a "follower" of that Facebook page, who was careful to inform Facebook that there was no criminal investigation or other investigation that had subpoena power, thereby ensuring that Facebook would not release any information per its own policies.

59. No discipline was handed out to anyone for the Bennie Taddler page.

60. On January 1, 2015, Plaintiff was demoted from his position as Assistant Radio Room Supervisor to the position of Information Desk Officer (IDO), which does not have the same benefits as his previous position and which has historically been seen as a position assigned to "problem officers."

61. On March 17, 2015, Plaintiff was asked by a dispatcher in the 911 center to help with an incoming call from a Ms. Amanda Haynes, which Plaintiff did.

62. The following day, Ms. Haynes came into the FSPD and asked Plaintiff for a copy of the police report from her call. Plaintiff informed her that it was not ready, but Defendant Risley instructed Plaintiff to "bang one out" quickly and give it to Ms. Haynes.

63. Plaintiff did as he was instructed and wrote a police report Ms. Haynes based on Plaintiff's memory of the fraction of the call in which he spoke to her and his recollection of what the 911 dispatcher told Plaintiff about the portion of the call that Plaintiff did not participate in. Ms. Haynes said that the report was not an accurate representation of what she had stated on the 911 call.

64. Defendant Risley then immediately took Ms. Haynes and a copy of the police report to Defendant Copeland, and an investigation was opened into Plaintiff, alleging, *inter alia*, that Plaintiff had filed a false police report and had been derelict in his duties.

65. Defendant Copeland subsequently expanded the investigation to include an allegation that Plaintiff had been dishonest, which is an

offense that requires termination if sustained.

66. Two weeks prior to Plaintiff's interaction with Ms. Haynes, she had filed a police report with Dayton Leavitt—a white officer—then had come to the police station two days later, complaining that Ofc. Leavitt's report was inaccurate and did not match what she had told him. Despite the exact same person making the exact same claim about accuracies in a police report, and despite these events happening only two weeks apart, Plaintiff was investigated for alleged dishonesty while Ofc. Leavitt was not investigated at all.

67. When confronted with the assertion that he had instructed Plaintiff to complete the report for Ms. Haynes, Defendant Risley—who is white—falsely denied having given such an instruction. Defendant Risley was never investigated for this dishonesty.

68. Whereas Plaintiff has been passed over for promotion time and again, with white corporals' being allowed to cheat on the test and/or being given higher scores for incorrect answers than Plaintiff was given for correct answers, a number of the Defendants named herein have been promoted or transferred to various sought-after positions within the

FSPD as a reward for their efforts in retaliating against Plaintiff, including the following examples:

a. Defendant Collins was given a position in the Street Crimes Unit, despite the notice of the position saying that an officer's attendance record would be considered in making the assignment and despite Collins having one of the worst attendance records at the FSPD;

b. Defendant Copeland was first given the position as Captain in charge of the Office of Professional Standards, and he was recently offered a position as Major, though he turned it down for unspecified reasons; and

c. Defendant Sprayberry was given a position as head of the Crimes Against Children division shortly after Plaintiff's complaint against her was "Sustained" and the complaint file was destroyed.

## COUNT I: VIOLATION OF 42 U.S.C. § 2000e, *et seq.*
### Racial Discrimination and Harassment

69. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if set forth herein verbatim.

70. Defendants, individually and collectively, have discriminated against and harassed Plaintiff because of his race (African-American), in that Plaintiff was treated differently as compared to similarly situated white employees and was investigated and disciplined for actions for which white employees were not even investigated.

71. Additionally, the reason(s) given by Defendants for Plaintiff's different treatment and repeated investigation and discipline are a mere pretext for discrimination based upon Plaintiff's race.

72. As a direct and proximate cause of Defendants' acts and omissions alleged herein, Plaintiff has suffered severe mental and emotional distress, lost wages, lost fringe benefits, has been stigmatized in the community, and incurred other damages in an amount to be proven at trial.

## COUNT II: VIOLATION OF 42 U.S.C.§2000e, *et seq.*
## Retaliation for Participation in Proceedings under Employment Statutes

73. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if set forth herein verbatim.

74. Plaintiff engaged in protected activities when he (1) filed a grievance regarding Defendant Sprayberry's race-based animus in April 2014

and (2) filed a formal EEOC charge in October 2014.

75. Plaintiff had a good-faith belief that he was opposing discriminatory employment practices.

76. Defendant City harassed, suspended, and transferred Plaintiff following his protected activities.

77. Defendant City's actions vis-à-vis Plaintiff might well persuade a reasonable person in the same or similar circumstance not to file a grievance or EEOC complaint regarding discriminatory employment practices.

78. Defendant City would not have harassed, suspended, and/or transferred Plaintiff but for his filing of a formal grievance and/or an EEOC complaint.

79. As a direct and proximate cause of Defendants acts and omissions alleged herein, Plaintiff has suffered severe mental and emotional distress, lost wages, lost fringe benefits, has been stigmatized in the community, and incurred other damages in an amount to be proven at trial.

## COUNT III: VIOLATION OF 42 U.S.C. § 2000e, *et seq.*
## Retaliation for Opposition to Harassment or

80. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if set forth herein verbatim.

81. Plaintiff complained to Defendant City that he and certain other third-party applicants to the FSPD were being harassed and/or discriminated against on the basis of race.

82. Plaintiff reasonably believed that he and certain other third-party applicants to the FSPD were being harassed and/or discriminated against on the basis of race.

83. Defendant City harassed, suspended, and transferred Plaintiff.

84. Plaintiff's harassment, suspension, and/or termination might well persuade a reasonable person in the same or similar circumstances not to complain about harassment or discrimination based on race.

85. Plaintiff's complaint of racial harassment and race discrimination was a determining factor in Defendant City's decision to harass, suspend, and or transfer Plaintiff.

86. As a direct and proximate cause of Defendants acts and omissions alleged herein, Plaintiff has suffered severe mental and emotional

distress, lost wages, lost fringe benefits, has been stigmatized in the community, and incurred other damages in an amount to be proven at trial.

## COUNT IV: VIOLATION OF 42 U.S.C. § 2000e, *et seq.*
### Failure to Promote

87. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if set forth herein verbatim.

88. Plaintiff restates and incorporates herein by reference the preceding paragraph of his Complaint as if set forth herein verbatim.

89. Plaintiff is a member of a protected group.

90. Plaintiff was qualified and applied for multiple promotions to Sergeant during periods when Defendant City was seeking applicants.

91. Despite the Plaintiff's qualifications, Defendant City rejected him.

92. Defendant City either hired or promoted individuals who were not members of a protected group with either similar or inferior qualifications for the positions denied to the Plaintiff.

93. As a direct and proximate cause of Defendants acts and omissions alleged herein, Plaintiff has suffered severe mental and emotional distress, lost wages, lost fringe benefits, has been stigmatized in the

community, and incurred other damages in an amount to be proven at trial.

## COUNT IV: VIOLATION OF 42 U.S.C. §§ 1981 & 1983
### Deprivation of Constitutional Rights

94. Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if set forth herein verbatim.

95. Plaintiff has a life, liberty, or property interest in his reputation and his employment with the FSPD.

96. Each Defendant has deprived Plaintiff of his reputation and other property interests without due process, without equal protection, in violation of the 14th Amendment, and in violation of 42 U.S.C. § 1981, and has defamed him.

97. Further, each Defendant, while acting under color of the State, has violated Plaintiff's constitutional rights and rights arising under federal law, including his First Amendment Rights.

98. At all times relevant to this Complaint, there was in full force and effect, 42 U.S.C. § 1983, which prohibited the deprivation of rights to persons such as the Plaintiff under color of state law.

99. The actions and inactions of Defendants were taken under color of state law, were in derogation of Plaintiff's Equal Protection rights, and were the motivating factor in the adverse actions taken against Plaintiff.

100.    Further, Defendants violated Plaintiff's rights to Free Speech, in that Plaintiff's anti-discrimination complaints were unjustified motivating factors in the actions taken against Plaintiff as complained of herein.

101. Defendants failed to give Plaintiff the Due Process afforded to him by the State of Arkansas and its constitution, as well as the U.S. Constitution.

102.    Defendants' actions were in violation of Plaintiff's clearly established right to equal protection under the laws, due process, and non-retaliation for opposing illegal discrimination.

103.    Each Defendant did not treat similarly situated white officers similarly to how Plaintiff was treated, as white officers were not subjected to investigations and/or discipline for actions for which Plaintiff was investigated and disciplined.

104.    Furthermore, Defendants deprived Plaintiff of his clearly First Amendment right to remonstrate, and Defendants retaliated

against Plaintiff for opposing unlawful discrimination, in violation of 42 U.S.C. § 1981, as applied by 42 U.S.C. § 1983, Title VII, and the Arkansas Civil Rights Act.

105.    The stigma caused by each Defendant's actions has caused Plaintiff to lose reputation and wages, has caused Plaintiff severe mental and emotional distress, and has denied Plaintiff due process and equal protection of the laws.

## COUNT V: VIOLATION OF ARKANSAS CIVIL RIGHTS ACT
### Retaliation & Discrimination

106.    Plaintiff restates and incorporates herein by reference the preceding paragraphs of his Complaint as if set forth herein verbatim.

107.    Each Defendant has discriminated against Plaintiff on the basis of his race, in violation of the Arkansas Civil Rights Act of 1993.

108.    As a direct and proximate cause of Defendants' acts and omissions alleged herein, Plaintiff has suffered violation of his federal- and state-protected rights, including his constitutional rights; has suffered severe mental and emotional distress, lost wages, and lost fringe benefits; has been stigmatized in the community and among the officers and employees of the FSPD; and has incurred other damages

in an amount to be proven at trial.

109.    Each Defendant's actions have been so egregious so as to warrant the imposition of punitive damages.

## CONCLUSION

WHEREFORE, Plaintiff prays for: appropriate compensatory damages, punitive damages against the individual Defendants in excess of the amount required for diversity jurisdiction, an injunction requiring Defendant City to remove all adverse information from Plaintiff's employment file, Declaratory Judgment that Defendant has violated federal law in the manner described herein, reasonable attorney's fee, costs, a trial by jury, and all other proper relief to which Plaintiff may be entitled in law or in equity.

Respectfully submitted,

Pinnacle Law Firm, PLLC
P.O. Box 7469
Little Rock, AR 72217
(501) 396-9246

By:

Matthew D. Campbell
Ark. Bar No. 2009032
matt@pinnaclelawfirm.com

*Sampson – Complaint*
*Page 27 of 27*